We have Ms. Nash who preserved three minutes for rebuttal, and so whenever you're ready. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Lindsay Nash for petitioner Juan Pablo Paucar. I'm joined today by Mr. Paucar and his family. Mr. Paucar is the father and critical source of support for his two young U.S. citizen daughters who suffer from medical, speech-language, and psychological disorders. His eldest daughter, JP, has struggled for years now with major depressive disorder, so serious that at the age of 11, she was placed in a psychiatric hospital for weeks after she became suicidal and began acting on impulses to self-harm. His daughters depend on him here for critical support. They would also face serious and even life-threatening risks in his country of origin, where mental health care is notoriously lacking and suicide is the leading cause of death for adolescent girls. And wasn't a lot of this information in front of the IJ and then also subsequently the BIA? Very little of this information was in front of the IJ, and that's due to the ineffective assistance of his prior counsel who didn't. That's not entirely correct. I mean, some of it didn't even occur until after the immigration proceeding was decided, right? The daughters' problems becoming acute enough to be suicidal. I only mention that because it seems to me we have two areas that we're going to have to consider. First, whether the ineffective assistance of counsel at the time the initial denial decision was made, the failure to put in the information then known, satisfied a certain standard, and then whether the additional information that could be put before the immigration court, whether that satisfies a different standard. Am I right in that, or do you take a different view? I believe that I mostly agree. The only difference is that with respect to the second set of additional evidence that materialized after his removal order, that should be considered together with the evidence that existed at the time of his hearing, and it should all be considered together because the hardship analysis is an aggregate analysis. And so that smaller set of evidence should be considered under the reasonable probability standard, the evidence that existed at the time of the ineffective assistance. But with respect to what prejudice your client suffered from the ineffectiveness of counsel, there's the question there about whether the agency applied the right standard, right? Because you're arguing it's a prima facie showing of eligibility, and the IJ at various times referenced COILO, which would have been a likely change in the result. But that we decide, that prejudice we decide based on what facts were known at that time, right? Yes, that is correct. Okay. I just wanted to make sure you did view it that way. Yes, we do. We think that all of the evidence should be considered, including the evidence of mental health, the mental health crisis that occurred in 2020. All of that evidence should be considered, but it's under this standard for new evidence, the COILO standard. And to your question, Judge Lee, all of this information was before the BIA. One of the major problems with that is that the BIA overlooked perhaps the most critical aspects of this evidence. So we talked about in our brief a little bit about the fact that the BIA overlooked and mischaracterized certain aspects of the evidence. I think there's three aspects of the evidence that it overlooked that are really significant here. And the first one is parts of the medical records related to JP's mental health crisis. It recognized that there were medical records, so it saw that, but it overlooked perhaps the most critical parts of those records. And those are the parts showing that she had become suicidal, that she was diagnosed with major depressive disorder, and that she required continued treatment for that condition. Specifically, the BIA, in overlooking evidence of her suicidality and her diagnosis, the BIA faulted Mr. Paukar for what it said was, what it said were not describing the issues or facts underlying the mental health concerns that led to her hospitalization. But the medical records make very clear on the first page that the reason why she was admitted to a psychiatric hospital was for stabilization of her suicidal ideation. And it shows that her diagnosis is that she had major depressive disorder. And so the BIA was both wrong in saying that there was nothing that described the issues that led to her hospitalization, and it didn't consider either of those factors anywhere in its decision. And this matters for at least three reasons. The first is that we know that the BIA routinely finds suicidality, even thoughts of self-harm and less crisis-level depression, to be key, if not determinative, facts in this kind of extreme and exceptionally unusual hardship determination. And so the fact that the BIA overlooked those facts means that it overlooked facts that could be potentially dispositive on their own here. The second reason why it matters is that it shows that the BIA misunderstood what the medical condition at issue actually was. The most that it says is that Mr. Pockar asserted that JP was depressed. It didn't talk about her actual diagnosis with major depressive disorder, so serious that she became suicidal. And there is an enormous difference between those two conditions. And that is especially critical given the extreme and the exceptionally unusual standard that we're talking about here. And then the third reason why it matters is because it tainted that BIA's conclusion that their mental health care in Ecuador would be adequate for JP's condition. If it didn't understand what her condition was and what the consequences of not having a certain level of care were, it could not have properly evaluated the mental health care in Ecuador. But this is not the only piece of the medical records that the BIA overlooked. It also faulted Mr. Pockar for not submitting what it called objective evidence showing that she has received additional treatment after discharge or that she continues to require additional treatment after discharge. And, in fact, the records show both of those things. There was included in the medical records a prescription for Lexapro, which it described as an antidepressant that would last for 30 days, so almost until the date that Mr. Pockar's evidence was submitted, that showed that she was getting additional treatment. Does it show? I mean, the discharge information certainly shows that, I guess, additional treatment and medication was ordered. But is there actually something that shows that there was follow-up on that, that the prescription was fulfilled and taken and that she went back for the follow-up appointments? Well, there's Mr. Pockar's testimony that talks about taking JP to therapy. It's his testimony and his declaration. I apologize. But that, the BIA was, and the BIA didn't really explain why that was not sufficient. What we know that he was, there was never any credibility concerns in immigration court. The BIA never expressed any credibility concerns. And so there is evidence in the records showing that she was following through on this, that the family had a care plan in place. There's not, you know, a declaration saying I was standing from someone else or saying I was standing there when she took this medication. But we know that she, we have Mr. Pockar's statements and we have the prescription, we have the prescription and we have the instructions that go with the prescription. And we also have the instructions showing that she was directed to go to psychotherapy. She was directed to go to medication, to do medication follow-up. She was directed to follow-up also with her pediatrician. And then we have Mr. Pockar and his declaration talking about the fact that the family did that. I think if this case were remanded, that's the kind of evidence that could come in on remand. This is not a marriage stage proceeding. The standard here is to show that it would likely change the outcome. And I think given the evidence that we have, that doctors prescribed this kind of medication, that she needs therapy, a parent whose credibility has not been questioned, and this court said in Mendez, a case that has some similarities to this case, that where the petitioner's credibility has not been questioned, we take their statements to be true. Now, if we were to remand, would the agency's obligation be to consider the record anew as of whatever day the agency starts to consider this? I mean, would it be appropriate to take new evidence, ascertain what the condition is as of today? Or are you urging that it be decided as of the day the agency made what you're urging us to say was a flawed decision? If this were remanded back to the immigration court, I do believe that the immigration judge would take that kind of evidence anew as if it were a new hearing, which for Mr. Parker would be essentially the first time he's had a real opportunity to have a hearing on any of this. But that would include new factual evidence, testimony from witnesses. So to the extent you had evidence of continued treatment, continued medication, you'd put that in at that time? Absolutely. That's exactly what we would do. I see my time. Counselor, I have a question. I'm coming in remotely here. Was there ever a determination as to whether J.P. would go to Ecuador or would stay in the United States in the event of her father's being deported? Well, there was not a determination in the record. And the reason why that didn't happen at the immigration court stage is because Mr. Parker's attorney never spoke to him about that. That's clear from the record, and that's part of the ineffective assistance of counsel. By the time he was at the BIA, there was a legal presumption in place that J.P. would go with him to Ecuador. And that's because his wife, by that point, was put in removal proceedings. And where both parents are in removal proceedings, under the BIA's decision in matter of Calderon-Hernandez, and they reaffirmed this more recently in matter of JJG, there's a presumption that the children will go with the parents to the country of origin absent an affidavit from the parent saying otherwise and documentary evidence showing who would provide for them. And because that's not in the record, there's still a presumption and an obligation to treat it as though J.P. will go to Ecuador with Mr. Parker. What is the status of the mother's removal proceeding at this point, if you know? She has an individual hearing, so a merits hearing, and her removal case scheduled for this spring, I believe. So it hasn't been decided yet? That's correct. Okay. Thank you. Thank you. Good morning. May it please the Court, Brenda Thurman for the government. This clearly is a very sympathetic case, but as Your Honor has already pointed out, there's two very heavy burdens and standards that the petitioner must meet here. First, with respect to ineffective assistance of counsel, it's the heavy burden of showing prejudice. But that prejudice is a prima facie showing of eligibility, not the would likely change the result in COILO, right? Correct, Your Honor. So, prima facie showing of eligibility, and we are in a situation where the agency is referencing COILO numerous times. Don't we have a concern as to whether they applied the right standard? No, Your Honor. That's because if you read pages five to seven of the record in context, the Board first lays out the evidence submitted in support of the ineffective assistance claim. Then they proceed to the new evidence in a different paragraph. And then in the paragraphs following that, it goes back and forth between the two standards. Well, that's the problem, is that don't we have some ambiguity? Well, no, it could have been, they could have been more concise in their writing, but there's enough there for this panel to review, Your Honor, because the panel or the Board separated the evidence that was associated with the ineffective assistance claim out from the new evidence. Right, but what- I'm sorry, just- Go ahead. But what are we to make of, even accepting your argument that the decision is not misciting COILO for, or it's not citing it for ineffective assistance, there isn't a spot in the decision where it states the correct ineffective assistance standard. Is there a place in here where it talks about prima facie case and the ability to submit strong evidence or what have you? Yes, I'm sorry, I didn't mean to interrupt. No, no, go ahead. The language that the petitioner needed had to show evidence that could have made a strong showing. That's enough because that is the language that this Court used in Rabiou and Diabatham and, I believe, Scarlett. Right, but is it- It's a permissive standard. But is that standard cited in the BIA's decision? I believe they cited Rabiou. I would have to double-check that, Your Honor. But the language they used for the ineffective assistance counsel claim was permissive. They understood that it was not as high as the standard for a prima facie showing of new evidence gathered after the conclusion of proceedings, which is the COILO standard. I'm sorry, Counselor. At least there may be indications of that. But on page 4 of the BIA record, where COILO is cited, the statement is, We do not conclude that the Respondent's motion to remand has met the heavy burden of presenting evidence of such a nature that we are satisfied if proceedings before the immigration judge were reopened with all the intended delays, new evidence offered would likely change the result in the case. Yes, Your Honor, but if you read pages 5 to 7 in context, it's the first two paragraphs are laying out the facts of both claims. Then there's two separate paragraphs of analysis for the ineffective assistance claim followed by the prima facie evidence, and then there's a summation or a summary paragraph. So read in context, the Board understood there was two standards in play here, and they understood that for ineffective assistance of counsel, it's a permissive standard. And I believe it was Vartelis, that case, where this Court decided that if the petitioner has not shown evidence of prejudice, and they wouldn't be able to prevail under any standard, they can affirm the Board's decision. And it seems that's the case here, because if you look at the evidence with regards to, say, like the asthma or the special needs, which they claim the prior counsel could have submitted, it's not materially different. It's basically the same. There's really nothing. It's different. You're saying it's the same. What the IAJ had before him was substantially the same as what ultimately was adduced later, both in terms of evidence known at the time of the IAJ's decision. With respect to, say, the asthma or the claims for special needs, Your Honor, but as for the new evidence with regards to the mental health conditions that arose post-proceeding, again, it's a very sympathetic case, but unfortunately, if you look, the only evidence they have is the discharge document and the affidavit. And the claims in the affidavit don't match up with the discharge document. The petitioner claimed that the child was in the care of a pediatrician weekly, was going to therapy sessions, that she could not mix her asthma medication with a psychiatric medication. None of that's in the discharge documents. All the discharge documents show is that at one point she did go for care, and that is worrisome. But I believe the board's point was, is this merely an episode, or is this going to be an ongoing condition or concern? And unfortunately for them- Are we talking now about the evidence that was presented by the first counsel? No, Your Honor. This is all of the post-hearing, the final supplement filed by new counsel, Your Honor, going towards, not towards the ineffective assistance claim, but going towards asserting there's been new, previous unavailable evidence. When you say it's not going to the ineffective assistance claim, isn't part of that claim the idea that there was additional evidence that could have been brought forward? And I understand that some of the evidence that's in the supplemental filings relates to events that occurred after the hearing, but to the extent a more fulsome record of these medical issues could have been pulled together at the time of the hearing, doesn't that, the fact that this later information was able to be submitted, suggests that their original counsel could have put together a fuller record. Well, it was the way the counsel presented it to the board, Your Honor. The most recent mental health crisis was presented as a new condition, separate from the hardships that were claiming were existing at the time of the hearing. This is not something prior counsel could have provided. I guess the suicidal ideation is something she was not experiencing before during- But the severity of the asthmatic condition and other anxiety and all that, that was present to some extent at the original time, and the question is whether its severity was presented fairly by original counsel. Well, the medical record submitted to show ineffective assistance, I mean, it does show she uses medications, but as we point out in our brief, it's the same medications that prior counsel presented during the removal proceedings, and the ear, nose, and throat doctor, I believe, that evaluated her, and the records that were submitted with the motion to reopen, it's not qualitatively different from the medical records that were submitted during proceedings. Well, I mean, the medication she took may have remained the same, but the original findings suggested that it was episodic, well-controlled, not a problem. I mean, in fact, we know it goes on for years and requires almost constant medication. So to that extent, it does appear that original counsel was somewhat slipshod in how he presented this. Well, if you look at the procedural history, Your Honor, that the first evidence of asthma was presented in 2012. Petitioner's merits hearing was held in 2016, so the IJ was aware that this is not just, that she was going to require ongoing care, but it's not to be. We're talking about mental health, not asthma, right? I was responding. I was talking about both in my question, because there is the asthmatic condition as well. Yeah, that's true. But as I was saying, in 2012, they had records showing asthma. By 2016, during the merits hearing in front of the immigration judge, and then in 2018, when the immigration judge finally issued his decision, I believe, that shows the agency was aware that this was an ongoing concern, but the evidence both presented during proceedings and also with the motion to reopen is not qualitatively different. The ear, nose, and throat doctor who wrote the records for the motion to reopen mentions that she has asthma and that it requires ongoing care, but the doctor doesn't go into the extent or impact this has on the child's health and certainly doesn't say anything about not being able to get health care in Ecuador, which, as we put out in our brief, with both regards to asthma and mental health care, there's very, very little in the record about that. Setting aside petitioner never claimed that the children would go back with him, and in his filings before the board, he was equivocal yet again, never stating that the children would go back. Now it's fairly clear that they would go back, correct? As was pointed out by your other attorney? Again, your honor, it would, but the board only could decide the evidence that was in front of it. They were never told. I know what you're saying. Right. And just one final point with regards to the psychiatric care. Petitioner only showed that the child was treated for two weeks and then after discharge needed medication for 30 days. There was a nine-month gap before the board decided this case, and no additional supplements were filed. Given how sympathetic the claims are, I've kept tabs with the board whether a motion to reopen, providing more evidence, would have been filed to buttress her claim, and as of Tuesday of this week, nothing has ever been filed updating the board with all of the additional evidence that they claim they would submit in a remand or reopen proceeding. So are you saying that the board would grant a new hearing, or are you just saying that they should try that route? I'm just saying that if there is, the claims that they, in the brief, that they didn't submit additional evidence because they were afraid the board was going to issue its decision, is not very persuasive given the board waited nine months to finally issue its decision, and then in the years after that, they've never tried to submit any additional evidence regarding the mental health issue. Does the panel have any additional questions? Well, I want to look at the primary patient showing standard a little bit, because there is a case, Pora de Silva, that talks about a petitioner only needing to demonstrate a, quote, realistic chance that he was eligible for relief and that he could have made a strong showing in support of his application. Do you agree that that's the correct standard? For evidence submitted post-proceedings, yes, Your Honor, that would be. For prejudice? No, not for prejudice, Your Honor. Pora de Silva was not a prejudice case, I believe. No, I think we're talking about the original decision. Yes. Where now to show prejudice from counsel's ineffectiveness, the standard is a prima facie showing of eligibility, and it's as Judge Walker stated it, isn't that right? I believe the cases that are more on point would be Rabiou and Diabatham. Which say that our standard is what? That could have made a strong showing of support in the application. I think what Judge Walker read included some language to that effect. Yes, and that he could have made a strong showing. So it's to demonstrate a realistic chance that he was eligible for relief. Well, if that's the case, Your Honor, then the standard. I never articulated that standard. Well, that sounds like the standard for a realistic possibility. It sounds like the prima facie standard. In that case, if Pora de Silva controlled, then the prejudice standard would be the same as the prima facie standard, it seems. Just another way of looking at this, if the prima facie standard is a realistic chance. Perhaps, but then the board wouldn't have applied or misapplied the standard then, even under petitioner's argument. Does the panel have any other questions? Thank you. Thank you. Thank you, Your Honor. I would just like to make a couple of additional points in my rebuttal. The first is that the government said that the board could only essentially work with what it had, and it had no indication that Mr. Parker's wife was in removal proceedings. That's not the case. At page 613 of the certified administrative record, in the brief that was submitted to the board, you can see that they informed the board that the wife was in removal proceedings. The board, of course, was obviously in a good position to know that since it's part of UIR. The other two points I'd like to make. One is that the BAA never cited RABU in its decision. It never mentioned the strong standard language. It never said that it was applying a lower prejudice evaluation, a lower prejudice standard at all. I would point out that the government has talked about the standard being the strong showing standard, and they've conceded that. But about a month and a half before the decision in Mr. Parker's case, the BAA decided a case called Matter of Melgar, where it said that the standard for ineffective assistance for the prejudice determination is reasonable probability, which is not the same language that this court has used. It's not the same language as the strong showing standard. I don't think we have a clear indication about whether those two are the same, or if not, exactly how they're different. But I would note that the BAA has adopted this reasonable probability standard that also is not mentioned in this decision, and that decision also is not cited here. Are you suggesting that the agency might in fact be imposing a more generous standard for the applicant at that point? Yes, Your Honor, because the reason- Okay, that's what I thought you were urging us to conclude. Okay. And so I believe under Brand X that Matter of Melgar would be the relevant standard here. The second point is just a response to the government's argument that the evidence showing prejudice was not qualitatively different from the evidence that was put into the record by prior counsel. I think there's some major gaps. I mean, I think there's obviously a lot of ways that the evidence is different. One is that his counsel not only didn't include updated information about J.P.'s asthma and the fact that it had become acute and uncontrolled, but counsel below didn't include any evidence whatsoever about country conditions related to asthma care, whereas Mr. Pockar's counsel did on remand, and specifically they showed things like in a study of children in Ecuador in a region like where Mr. Pockar would go if he were removed, there was no inhaled corticosteroids. That is the kind of medication that the evidence shows that J.P. was taking. She was taking Flovip, and that's in the doctor's letter at 783 of the record. And so some of the information about what the problems were in the medication she was taking were in the record, but there was not any kind of evidence showing how it would actually relate to a hardship claim or how she would experience hardship as a result of it because prior counsel didn't put that in. Other evidence that was not included in the record below is the psychological evaluation done by Dr. Ellen Taylor shortly after Mr. Pockar stopped being represented by his prior counsel. Dr. Ellen Taylor found in 2018 that J.P. had been suffering from social phobia and separation anxiety disorder. Mr. Pockar talked in his declaration about being told by teachers about some of the manifestations or some of the symptoms of that dating back to when she had been in kindergarten, so that was certainly something that should have been investigated and looked into before his hearing but wasn't. The reason why that may not have come up yet is because the BIA entirely ignored that diagnosis, ignored the psychologist's prediction that if Mr. Pockar were to leave the home, the children would be re-traumatized and experience grave harm. And this is another facet of the evidence that the BIA entirely overlooked, and this alone is the kind of situation where this court would remand, as we saw in Iza Pouyataksig and other cases, where the BIA has entirely failed to address psychological diagnoses, even finding a risk of developing some of these conditions, much less an actual diagnosis. And then last thing I would just say, oh, the other thing that would be relevant to point out is just that there was no evidence about SP speech impediment in the record before the IJ. And we know that was significant because the IJ specifically said in her decision that there was no evidence of something like a learning disability at the hearing. And this court has said in other cases that where something like that is specifically called out, that's reason to believe that it was considered significant by the court or the agency below. And so those are just three of the ways that the evidence was very different for purposes of the prejudice determination. And I would just sort of flag again that a lot of the points the government is making and the cases it cited were merit-staged decisions, which is very different from the reasonable probability standard that this court and other courts have made clear is a standard that doesn't require the petitioner to show by a preponderance of the evidence that they would have prevailed. It's lower than that and it's lower than the COILO standard. And that's the one that should be used when talking about this other evidence. Thank you. Thank you. Thank you to both advocates for a fine job. So that is our only case on the calendar for argument today. So we'll take the case under advisement, and I think we are ready to adjourn. Court is adjourned.